OF THE STATE OF ARKANSAS. 477

TERM, 1858.]                    Henderson & Jones vs. Martin et al.

HENDERSON & JONES VS. MARTIN ET AL.

Covenant by the defendants, describing themselves as *a committee* on the part of a company—naming it—reciting that *they had sold* to the plaintiffs certain property, and binding themselves to deliver such property to the plaintiffs at a certain place, and on a certain day: *Held,* on demurrer, that it was a personal covenant, upon which an action would lie against the covenantors.

*Appeal from Pulaski Circuit Court.*

The Hon. JOHN J. CLENDENIN, Circuit Judge.

WILLIAMS & WILLIAMS, for the appellants.

A corporation can by no possibility bind itself by deed only under its corporate seal: nor can any one bind a corporation only by the corporate seal; notwithstanding the corporation would be liable to an action on an implied contract upon an agreement sealed with the private seals of the agents, either before or after benefits were derived under the contract: But because the corporation might be liable on an implied assumpsit upon the instrument thus sealed with the private seal of her

agents, still this would not prevent the plaintiffs below from holding the defendants personally liable, as decided in *Randall vs. Van Vechten*, 19 *John. Rep.* 60.

The agent of a corporation cannot bind the corporation by his private seal; and if he contracts in such a manner as not to bind his principal, he himself is liable. The affixing of a private seal to an instrument of writing or contract purporting to be executed on behalf of a corporation renders the agents so affixing personally responsible. *Dunlap's Paley's Agency*, 3 *Amer. Ed.* 377 *and notes and cases cited; Tippetts vs. Walker*, 4 *Mass.* 595; *White vs. Skinner*, 13 *John.* 307; 7 *Tenn. Rep.* 207; 3 *John. Cas.* 180; *Caines* 254; 5 *East* 148; *Bank of Columbia vs. Patterson's adr.*, 7 *Cranch* 304; *Lessee of Hatch vs. Barr*, 1 *Ohio* 390; *Savings Bank vs. Davis et al.*, 8 *Conn.* 191; *Kinzie vs. Chicago*, 2 *Scam.* 187; *Bank of Metropolis vs. Guttschlick*, 14 *Peters Rep.* 19; 16 *Mass.* 42; 1 *Greenlf. Rep.* 231; *Dicker vs. Freeman*, 3 *Ib.* 338; *Bank vs. Rose et al.*, 2 *Strob. Rep.* 257; *Angell & Ames*, *sec.* 217, *and cases cited; sec's* 295, 296.

The fact that the words " Committee of the Little Rock Lumber and Manufacturing Co.," were used, does not cut any figure in the case, being merely words of description as held in *Toft vs. Brewster et al.*. 9 *John.* 334, *and cases cited;* 15 *Ib.* 44; 7 *Cowen* 453.

S. H. HEMPSTEAD, for the appellees.

In this case the agreement states *" we the undersigned committee on part of the Little Rock Lumber* and manufacturing company," etc., and signed and sealed by defendants and one other person as *" committee."*

This is the contract of the company, and on which the agent is not liable. To prove which, see, *Story's Agency* 154; 19 *John.* 60; 4 *Wend.* 28; 1 *Cowen* 537; 6 *Cushing* 55; 9 *Mass.* 336; 9 *Paige* 193; 22 *Wend.* 325; 2 *Taunt.* 374; 16 *Pickering* 351; 4 *Cush.* 371; 6 *B. Mon.* 612; 9 *S. & M.* 29; 21 *Conn.* 627; 11 *S. & R.*, 126; 2 *Greenl.* 358; 23 *Wend.* 435; 4 *Hill* 351; 2 *Gilman* 371; 11 *Mass.* 97; 16 *Mass.* 461; 1 *Salk.* 95.

Mr. Justice Scott delivered the opinion of the Court.

This was an action of covenant by the appellants against the appellees, assigning, for breach, the non-delivery of the property specified in the covenant, although specially demanded. The following is a copy of the covenant, oyer having been granted, to wit:

"Know all men by these presents, that we, the undersigned committee on the part of the Little Rock Lumber and Manufacturing company, have this day sold to J. R. Henderson and Jahiel Jones, of the firm, name and style of Henderson & Jones, the following propery, to wit: one Steam Boiler, one Steam Doctor, one Steam Engine, one Saw Sash and Carriage, with all fixtures complete for sawing, and one bull-wheel with carriage. The above property we bind ourselves to deliver to the said Henderson and Jones at the Mill of said company in Pulaski county, near Little Rock, on the first day of August next, or sooner if required by them. Given under our hand and seal this 16th day of June, 1855.

T. H. McCRAY,      [seal.]
JARED C. MARTIN,   [seal.]
JOHN W. PURDOM,    [seal.]
                   Committee.

There was a demurrer to the declaration assigning for cause that it appears by the covenant, that the contract declared upon was that of the Little Rock Lumber and Manufacturing company, and not the individual contract of the appellees. The demurrer was held good, and the appellants electing to stand upon their declaration, final judgment was rendered accordingly, and the cause brought here by appeal.

The question presented is one of legal construction of the instrument declared upon. Whether the supposed principal be a corporation, or some other association of individuals does not now appear upon the record; and whether the supposed agency existed, and the supposed agent was duly authorized in the premises is in no otherwise affirmed than by the face of the

covenant. It is a sealed instrument in which there are apt or obligatory words to charge the supposed agents personally, and no such words to charge the supposed principal.

In any case by a written contract, whether sealed or not, it is not to be doubted, but that an agent, while contracting as such, whether known as an agent or not, may make the contract his own, or in other words, may voluntarily incur personal responsibility in the premises, (*Story on Agency, sec. 269.*) And when such personal responsibility might be thus voluntarily assumed by the agent, and fixed upon him in favor of the other contracting party, it could not be affected, although it might be held that, in an action of assumpsit against the principal, it would be competent to show the existence of a parol authority to the agent to enter into the contract, and thus make him liable also. To suppose that upon such proof, the voluntarily assumed liability of the agent would be removed, would be to suppose that a valid written contract could be contradicted and destroyed by parol evidence of a fact not at all inconsistent with its validity. Upon principle, if parol evidence could be introduced at all in such case it could only be for the purpose of showing the liability of an additional party, in an action against him, but not for the purpose of discharging another party, who might be expressly bound by his written contract. It is true that it might be a question of construction, whether the party to the written contract was or was not bound, but in the case supposed we have assumed that he was bound by his voluntary undertaking, and have deduced the legal consequences.

In making legal constructions, however, there is a well defined distinction between the liabilities of principal and agent, respectively, upon contracts under seal, and upon those not under seal, consisting mainly in the allowance of a greater latitude of construction as to instruments not under seal, in ascertaining what was, in contemplation of law, the true intention of the immediate parties to the written contract. This distinction obviously grows out of the very nature of the case—its necessity. Without its observance, the instrument could not be

upheld at all in the one case; while in the other case it might be well enough upheld and enforced. Thus, in the case of a sealed instrument, which purports to be, not the deed or covenant of the principal, but that of the agent, although the party describes himself as the agent of another, yet as the deed or covenant cannot be deemed the deed or covenant of the principal, it would be utterly without any legal effect, unless it was construed to be the deed or covenant of the agent; " and therefore, *ut res magis valeat quam pereat*, the interpretation is adopted, that it is the intention of the parties that the agent shall be bound for the principal; for the law will not impute to the parties an intention to do a void act, much less will it, for such a purpose, allow the words of the instrument to be strained out of the ordinary meaning attached to them. The words, therefore, which touch the character of the agent, are, in such case, treated as mere words of description, as a mere designation of the person by whose authority, and for whose benefit he is acting; and not as intending to exclude a personal responsibility. In this way the whole instrument may have a sensible effect according to the import of the words used in their ordinary signification and connection." (*Story on Agency, sec.* 273, 5*th Edition, and illustrations there cited in the margin.*)

Supposing, in the case before us, that the supposed principal is not a corporation, but a natural person or persons, and that although in the first case it is only by the corporate seal that the body politic can covenant, but nevertheless, that in the second case the seal of the agent may be taken as the seal of the natural person—as seems to be held in the case of *Randall vs. Van Vechten*, (19 *John. Rep.* 60,) so much relied on by counsel—still it must be conceded that there is something more than mere sealing and delivery necessary to a covenant, and that it is no less essential that there should also be proper parts of a contract—terms to import an undertaking on the part of the principal—his proper covenant as contradistinguished from the covenant of the agent personally. There is no semblance of such terms in the case before us;—the terms employed are " we

31

the undersigned  *  *  *  *  have sold," and " the above property we bind ourselves to deliver," etc.

" It is not sufficient to charge the principal, or protect the agent from personal responsibility, merely to describe himself as agent, if the language of the instrument imports a personal contract on his part." (Pents vs. Staunton, 10 Wend. 277.)

All such cases, however, are to be distinguished from authorized agencies on the part of the government, where a different rule of construction prevails, upon the idea, that the contract is always to be taken to have been made upon the public credit.

The cases mainly relied upon as militating against the rule of construction that we maintain as that resting upon principle and established by the great current of authority, are those of Randall vs. Van Vechten, 19 John. Rep. 60, and Dubois vs. The Delaware and Hudson Canal Co., 4 Wend. R. 285, in which it seems to be maintained, that a duly authorized agent is not to be affected by any personal responsibility, although no action could be maintained against the principal, upon the sealed instrument, if an action would otherwise lay against the principal.

Upon the doctrine of these two cases, it is remarked, in Story on Agency, sec. 278: " But it deserves consideration whether the doctrine can be generally maintained, that, because the principal may be indirectly liable on the contract, therefore the agent is exonerated from all personal responsibility. Besides, it is manifest, that the agents had here made a contract in their own names, although as a committee of the corporation, and the deed was their own, and not that of the corporation. The corporation, confessedly, could not be sued on that instrument as their deed; and it would seem to be a general rule, that an agent, who executes an instrument, must execute it in the name of the principal, so as to give a right of action thereon against him, if he would avoid personal responsibility; and, if it be a contract by deed, then it must be in the name, and be the deed of the principal; for, if it be the deed of the agent, he alone is responsible thereon as the proper legal party to it."

After some further remark and illustrations, the text is concluded as follows: " Indeed nothing is more common than for a contract to be made by which the agent is personally bound, and which yet is, *ex consequenti*, binding on the principal also, although the latter is not a direct and immediate party to the instrument. This is true, not only in the commercial law of England and America, but also in that of the foreign nations of continental Europe. The more correct and satisfactory doctrine, would, therefore, seem to be, that, when the agent is a direct party to the instrument, and the principal is not, so that the latter is not, *ex directo*, suable thereon, there the agent, although he describes himself as agent, is suable upon the covenants and agreements contained therein, as his own personal contract. Still, however, the doctrine is to be understood with the qualification, that in the instrument there are apt words to charge the agent personally."

In note 6 to sec. 279, in the 5th edition of the work, it is said that these two cases, on this point, are not easily to be reconciled with many other authorities, which are cited at great length: And, in the case of *Hopkins vs. Mehaffy*, 11 *Serg. & R.* 126, 129, Mr. Justice GIBSON, after laying down the law upon this point, as we have found it to be, proceeds to remark: " It is somewhat remarkable that the distinction between a parol and a sealed contract was not taken in *Randal vs. Van Vechten*, 19 *John. R.* 60, and that the authorities, cited to prove that an agent, who personally covenants in behalf of his principal, is liable only in the event of there being no recourse to the principal, directly prove the reverse." (See, also, divers other authorities, to the same effect, in *note* 2, *to sec.* 273, *Story on Agency*.)

The result is, that in our opinion, the covenant in question is the personal covenant of the defendants below, and that the Court erred in sustaining the demurrer. The judgment will, therefore, be reversed and the cause remanded with instructions to overrule the demurrer and proceed with the cause.